UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EWART BURTON,

                        Plaintiff,

           v.

WELLS FARGO BANK, N.A. AS TRUSTEE;
OCWEN LOAN SERVICING LLC; NEW REZ, PHH
MORTGAGE SERVICES,

                   Defendants.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

23-CV-5520
(Gujarati, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge[1]:**

      Plaintiff Ewart Burton, proceeding *pro se*, commenced this action on August 1, 2023 by

filing a complaint against Defendants Wells Fargo Bank, N.A., as Trustee ("Wells Fargo"); Ocwen

Loan Servicing, LLC; and New Rez c/o PHH Mortgage Services ("PHH")[2] (collectively,

"Defendants").  *See generally* Dkt. No. 1.  The complaint concerns a judgment of foreclosure and

sale that was entered by the Supreme Court of New York State, Kings County against Plaintiff's

residential property located at 751 East 56th Street, Brooklyn, New York 11234 (the "Property").

*See id*.  The crux of Plaintiff's claims is that Wells Fargo—the plaintiff in the underlying

foreclosure action—lacked standing to foreclose the Property and engaged in fraudulent conduct.

---

[1] Benjamin Wade, a spring 2024 intern in my Chambers and third-year law student at Benjamin N. Cardozo School of Law, provided substantial assistance in the research and drafting of this report and recommendation.

[2] Defendant Wells Fargo Bank, National Association as Trustee for Soundview Home Loan Trust 2007-OPT5, Asset-Backed Certificates, Series 2007-OPT5 ("Wells Fargo") is incorrectly named in the complaint as "Wells Fargo Bank, N.A. As Trustee."  *See* Dkt. Nos. 1, 8.  Defendant PHH Mortgage Corporation ("PHH") is also incorrectly named in the complaint as "Ocwen Loan Servicing, LLC, and New Rez c/o PHH Mortgage Services."  *See id.*

*Id.* Plaintiff seeks a declaratory judgment rendering the judgment of foreclosure void and unenforceable, an injunction staying the sale of the Property, and compensatory damages in excess of $500,000, plus punitive and treble damages.

Currently pending before this Court, on referral from the Honorable Diane Gujarati, United States District Judge, is Defendants' motion to dismiss the complaint. *See* Dkt. No. 10; *see also* Jan. 5, 2024 Referral Order. For the reasons explained below, this Court respectfully recommends that Defendants' motion to dismiss be granted in its entirety.

## I.    Background

### A.    Factual allegations

The following facts are taken from the complaint, the parties' submissions related to Defendants' motion to dismiss, and documents from the underlying foreclosure actions. *See, e.g.,* Dkt. Nos. 1, 10, 11, 12, 18, 19, and 20. On July 20, 2007, Plaintiff obtained a loan (the "Loan") from non-party Option One Mortgage Corporation ("Option One") in the amount of $536,250.00, which was memorialized by a note (the "Note") and secured by a Mortgage (the "Mortgage") encumbering the Property. *See* Dkt. No. 12-2. The Mortgage was recorded on August 6, 2007 in the Kings County Clerk's Office as City Register File Number ("CFRN") 2007000402933. *Id.*

On August 5, 2009, the Mortgage was assigned to Wells Fargo by American Home Mortgage Servicing Inc. ("AHMSI"), the successor-in-interest to Option One. *See* Dkt. No. 12-3. The assignment was recorded in the Kings County Clerk's Office as CRFN 2009000333213 (the "Assignment"). *Id.*[3]

---

[3] According to Defendants, the Assignment was corrected twice to properly reflect the conveying parties, with the most recent assignment dated April 27, 2015 and recorded on August 3, 2015 as CFRN 2015000264345. *See* Dkt. No. 11, at 3.

On October 5, 2009, Wells Fargo commenced a foreclosure action against Plaintiff in the Supreme Court of New York State, Kings County under index number 26681/2009 ("First Foreclosure Action"). *See* Dkt. No. 1, at 16. Plaintiff was represented by counsel in the First Foreclosure Action. The First Foreclosure Action was eventually resolved after the parties agreed to modify the terms of the Loan, which are reflected in a loan modification agreement dated January 10, 2011 ("Loan Modification Agreement"). *See* Dkt. No. 1, at 16, 30-36; Dkt. No. 12-4, at 44-50.

Beginning on July 1, 2013, Plaintiff fell behind on his monthly payments and defaulted on the Loan. *See* Dkt. No. 1, at 34; Dkt. No. 11, at 3; Dkt. No. 12-4, at 8.

On September 25, 2015, Wells Fargo initiated a second foreclosure action in the Supreme Court of New York State, Kings County under index number 511750/2015 ("Second Foreclosure Action"). *See generally* Dkt. No. 12-4. Plaintiff appeared *pro se* in the Second Foreclosure Action and filed an answer with affirmative defenses and counterclaims. *See* Dkt. No. 12-5. Plaintiff's affirmative defenses included Wells Fargo's purported lack of standing and the invalidity of the Loan Modification Agreement. *Id.* Plaintiff's counterclaims were for fraud, predatory lending, and conspiracy to violate his property rights. *See id.*

Plaintiff subsequently retained counsel in the Second Foreclosure Action and filed a motion to dismiss the complaint on April 11, 2016. *See* Dkt. No. 11, at 4. In that motion, Plaintiff once again argued that Wells Fargo lacked standing because it was not the owner or holder of the Note and Mortgage. *See id.* Plaintiff also argued that the assignment attached to Wells Fargo's complaint was fraudulent and should be vacated, set aside, and declared void.[4] *See* April 11, 2026

---

[4] Plaintiff, through his attorney, also reported these claims to the Office of the New York State Attorney General in a letter dated June 10, 2016. *See* Dkt. No. 1, at 16.

Motion to Dismiss in Second Foreclosure Action ("Motion").[5]  The referenced assignment is the same one submitted by Wells Fargo here—*i.e.*, the Assignment (Dkt. No. 12-3).

In support of these claims, Plaintiff pointed to the assignments submitted by Wells Fargo in the First Foreclosure Action (Dkt. No. 1, at 18) and the Second Foreclosure Action (Dkt. No. 12-3) and argued that the documents contained irregularities suggestive of fraud.  *See* Motion, at 5 ("Upon closer inspection of both purported Assignments, dated October 5, 2009 it is evident that one is indeed a forged instrument.").

First, Plaintiff noted that the assignment submitted in the First Foreclosure Action was signed by "Linda Green as Vice President of Option One Mortgage Corporation," whereas the Assignment submitted in the Second Foreclosure Action, and in this action, was signed by "Linda Green as Vice President of American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation."  *Id.*

Second, Plaintiff identified that the assignment submitted in the First Foreclosure Action is made to Wells Fargo from Option One Mortgage Corporation, whereas the Assignment is made to Wells Fargo from AHMSI.  *Id.*

Third, Plaintiff explained that while both documents appear to have been notarized on the same date by the same notary public, the signatures of Linda Green and Assistant Secretary Tywanna Thomas appear to be different when comparing the two documents.  *Id.*  Plaintiff argued that these differences could lead to only one conclusion: that one of the assignments was forged, if not both.  *Id.*  According to Plaintiff, Wells Fargo was therefore not the owner and holder of the Note and Mortgage and lacked standing to foreclose.  *Id.* at 6.  Plaintiff also argued that the Loan

---

[5]  *See* https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=NU2qy9/yRRJB0VwY2f1ptg== (last visited May 3, 2024).

Modification Agreement should be vacated, set aside, and declared null and void because Wells Fargo misrepresented that it was the holder of the Note and Mortgage.  *Id.*

On May 3, 2016, Wells Fargo filed its opposition to Plaintiff's motion to dismiss and cross moved for summary judgment and an order appointing a referee to compute damages.  *See* May 3, 2016 Opposition and Cross-Motion in Second Foreclosure Action; *see also* Dkt. No. 11, at 4.

On September 29, 2016, the Supreme Court of New York State, Kings County, entered an order striking Plaintiff's answer and counterclaims, granting Wells Fargo's motion for summary judgment, and appointing a referee to compute damages and assess whether the Property could be sold.  *See* Dkt. No. 12-6.

On May 14, 2018, Wells Fargo moved for a judgment of foreclosure and sale.  *See* May 14, 2018 Motion for Judgment of Foreclosure and Sale in Second Foreclosure Action; *see also* Dkt. No. 11, at 4.  Plaintiff, appearing through new counsel, opposed the motion and again argued that Wells Fargo lacked standing.  *See* September 19, 2018 Opposition to Motion in Second Foreclosure Action.  On January 14, 2019, the Supreme Court of New York State, Kings County granted Wells Fargo's motion, confirmed the referee reported, and entered a judgment of foreclosure and sale ("Foreclosure Judgment").  *See* Dkt. No. 12-7.

On August 9, 2019,[6] Wells Fargo moved for an order of sale, which Defendants claim that Plaintiff opposed *pro se*.[7]  *See* Dkt. No. 11, at 4; *see also* August 9, 2019 Motion for Order of Sale in Second Foreclosure Action.  On December 19, 2019, Plaintiff, through counsel, filed an order to show cause seeking dismissal of the foreclosure complaint based on Wells Fargo's failure to

---

[6] Defendants incorrectly state that the motion was filed on August 9, 2018.  *See* Dkt. No. 11, at 4.

[7] Based on this Court's review of the docket in the Second Foreclosure Action, Plaintiff did not file an opposition.  The docket does, however, indicate that Plaintiff was still represented by counsel on August 9, 2019.  *See* December 19, 2019 Consent to Change Attorney in Second Foreclosure Action.

timely move for a judgment of foreclosure and sale.  *See* December 19, 2019 Order to Show Cause in Second Foreclosure Action; *see also* Dkt. No. 11, at 4.  On January 17, 2020, the Supreme Court of New York State, Kings County granted Wells Fargo's motion, and on March 12, 2020, the court denied Plaintiff's order to show cause.  *See* Dkt. No. 12-8.

Following the COVID-19 pandemic and the passing of the presiding judge, Wells Fargo filed a motion on April 3, 2023 requesting an extension of time to initiate the sale of the Property. *See* April 3, 2023 Motion for Extension in Second Foreclosure Action; *see also* Dkt. No. 11, at 4. The parties do not provide any further update on the status of the Second Foreclosure Action.

### B.    Procedural history

On August 1, 2023, Plaintiff commenced this diversity action by filing the complaint.  *See generally* Dkt. No. 1.  The complaint names three defendants: (1) Wells Fargo; (2) Ocwen Loan Servicing, LLC; and (3) New Rez c/o PHH Mortgage Services  (*id.* at 2-3); and asserts claims for "Title 18 U.S.C. (241) conspiracy against rights; 28 USC (Fraud); Rule 60(b)(3) Fraud; misrepresentation other conduct; U.S. Constitutional 4th Amendment; (Due Process) 5th Amendment; and 14th amendment deprivation of rights under color of law" (*id.* at 4).  Plaintiff seeks relief in the form of a "declaratory judgment declaring the lower court determination void or unenforceable"; injunctive relief staying any sale or distribution of the Property; and compensatory damages in excess of $500,000, plus punitive and treble damages.  *Id.* at 6.

The crux of the complaint is that Wells Fargo lacked standing in the Second Foreclosure Action, and consequently, the Foreclosure Judgment is void and unenforceable.  *Id.* at 7-9. Specifically, Plaintiff argues that Wells Fargo failed to establish that it was the owner and holder of the Note and Mortgage.  *Id.* at 7.  Plaintiff also argues that the Loan Modification Agreement is invalid because Wells Fargo made a material misrepresentation and committed fraud by claiming

that it was the owner and holder of the Note and Mortgage. *Id.* at 8. Plaintiff also accuses Defendants of submitting fraudulent assignments in the foreclosure actions; conspiring to deprive him of his property rights; and violating the Fair Debt Collection Practices Act ("FDCPA"), Truth in Lending Act ("TILA"), and "Deceptive Practices Act." *Id.* at 9, 11.

On August 8, 2023, Plaintiff served Wells Fargo with the summons and complaint by delivering copies to a bank teller at a Wells Fargo branch located at 420 Montgomery Street, San Francisco, California 94104. *See* Dkt. No. 6, at 6. Plaintiff served PHH by delivering copies to the receptionist at Houser LLP, counsel for Defendants in this action. *See id.* at 5. Plaintiff also served "Ocwen Loan Serving LLC c/o McCabe Weisberg & Conway LLC" by delivering copies to Ian Burman, an individual purportedly authorized to accept service on behalf of Ocwen, and by mailing the documents to 10 Midland Avenue, Port Chester, New York 10573. *See id.* at 2-3.

On November 17, 2023, Defendants filed the current motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(6). *See* Dkt. No. 10. Defendants argue that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine (described further below), preclusion principles, and the applicable statutes of limitation. *Id.* Defendants also argue that to the extent Plaintiff is asserting a claim for damages based on fraud, the complaint fails to state a claim and does not meet the heightened pleading standard for fraud set forth in Fed. R. Civ. P. 9(b). *Id.* Finally, Defendants argue that Plaintiff did not properly serve Wells Fargo or PHH with the summons and complaint. *Id.*

## II.    Legal Standards

### A.    Dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction

"When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first." *Whyte v. Bayview Loan Servicing, LLC*, No. 21-CV-

3301 (PKC) (LB), 2022 WL 4484664, at *3 (E.D.N.Y. Sept. 27, 2022) (cleaned up).  "This is because if a court determines that it lacks subject-matter jurisdiction, then the defendant's 'other defenses and objections become moot and do not need to be determined.'"  *Id.* (quoting *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019)).

In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction."  *Id.* at *3  (cleaned up).  "The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."  *Lee v. Banks*, No. 23-CV-5800 (JLR), 2024 WL 1657908, at *3 (S.D.N.Y. Apr. 17, 2024) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Whyte*, 2022 WL 4484664, at *3  (cleaned up).

### B.    Dismissal under Fed. R. Civ. P. 12(b)(5) for insufficient service of process

"Rule 12(b)(5) permits a party to move to dismiss the complaint for insufficient service of process."  *Bell v. Deutsche Bank*, No. 18-CV-01593 (JMA) (GRB), 2019 WL 4917901, at *2 (E.D.N.Y. Sept. 30, 2019) (citing Fed. R. Civ. P. 12(b)(5)).  In deciding a Rule 12(b)(5) motion to dismiss, "the court considers whether the plaintiff has complied with Rule 4, which governs the content, issuance, and service of a summons."  *Id.*  The Court may consider "matters outside the complaint to determine whether it has jurisdiction."  *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).  Once a defendant challenges the sufficiency of service of process, the

burden of proof is on the plaintiff to show the adequacy of service. *Khan v. Khan*, 360 Fed. App'x. 202, 203 (2d Cir. 2010).

### C.    Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the Court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotations omitted). "District

courts must interpret a *pro se* complaint to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (cleaned up).

"In deciding a motion to dismiss for failure to state a claim, the Court must consider only the allegations in the complaint, those documents attached to the complaint or incorporated by reference, and facts subject to judicial notice." *Bonner v. Town of Brookhaven*, No. 22-CV-4690 (GRB) (ARL), 2023 WL 6812276, at *2 (E.D.N.Y. Oct. 16, 2023) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "The Court may take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Bonner*, 2023 WL 6812276, at *2 (citing Fed. R. Evid. 201(b)(2)). "Judicial notice is regularly taken of publicly available documents and government records, *Kramer*, 937 F.2d at 774, including foreclosure records, *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 21-CV-4575 (LGS), 2022 WL 4226025, at *1 (S.D.N.Y. Sept. 13, 2022)." *Bonner*, 2023 WL 6812276, at *2. "[I]n setting forth the relevant history, . . . the Court takes judicial notice of matters occurring in previous litigations involving the [parties] in this action." *Lorick v. Kilpatrick Townsend & Stockton LLP*, No. 18-CV-7178 (ENV), 2021 WL 7906510, at *1 (E.D.N.Y. Aug. 20, 2021) (taking judicial notice of filings in state court foreclosure action), *report and recommendation adopted*, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022).

## III.    Dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

Liberally construed, Plaintiff's complaint raises the following claims: (1) the Foreclosure Judgment should be declared void and enforceable, and the sale of the Property should be enjoined, due to Wells Fargo's lack of standing; (2) fraud; (3) violations of the FDCPA, TILA, and New York General Business Law ("GBL") § 349 (collectively, Plaintiff's "Consumer Protection Claims"); (4) conspiracy against rights pursuant to 18 U.S.C. § 241; (5) deprivation of rights; and

(6) violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1. For the reasons explained below, Plaintiff's claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## A.    Plaintiff's lack-of-standing claims

### 1.    The *Rooker-Feldman* doctrine bars Plaintiff's claims

The *Rooker-Feldman* doctrine is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that federal district courts shall not sit in direct review of state court decisions unless Congress has passed a statute to authorize such relief. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). In practice, *Rooker-Feldman* bars federal district courts from becoming a court of appeals for state court decisions. *Id.* Instead, a person seeking relief from a state court judgment must find a state court remedy or obtain relief from the United States Supreme Court pursuant to 28 U.S.C. § 1257. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("§ 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court").

*Rooker-Feldman* bars federal courts from reviewing claims that were not only raised in the state court action, but also claims that were not raised but are nonetheless "inextricably intertwined" with the state court judgment. *Hoblock*, 422 F.d3d at 86–87. There are four requirements for the doctrine to apply: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir.

2016) (quoting *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010)).  Requirements one and four are considered "procedural," and requirements two and three are considered "substantive." *Hoblock*, 422 F.3d at 85; *Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK) (MMH), 2023 WL 2707098, at *5 (E.D.N.Y. Mar. 30, 2023).  "While all four requirements must be met to preclude jurisdiction, the second requirement is the 'core' requirement." *Francis*, 2023 WL 2707098, at *5.  This "requirement is only satisfied if 'the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)).

Here, requirements one and four of *Rooker-Feldman* are easily satisfied.  Plaintiff lost in state court, as evidenced by the Foreclosure Judgment, and the Foreclosure Judgment was entered before Plaintiff initiated the instant action.  *Compare* Dkt. No. 1 *with* Dkt. No. 12-7.  This Court's jurisdiction thus hinges on requirements two and three—whether Plaintiff's claims seek redress for injuries caused by the Foreclosure Judgment, and whether he invites this Court to review the Foreclosure Judgment.

Faced with similar claims, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Davis v. JP Morgan Chase Bank*, No. 14-CV-6263 (KMK), 2016 WL 1267800, at *6 (S.D.N.Y. Mar. 30, 2016) (cleaned up); *see also In re Holmes*, No. 19-23497 (SHL), 2020 WL 4279576, at *4 (Bankr. S.D.N.Y. July 24, 2020) (collecting cases).  As the United States Court of Appeals for the Second Circuit explained in *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014), *Rooker-Feldman* precludes a federal district court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427.  Indeed, in *Vossbrinck*, the plaintiff raised similar

12

claims to those alleged by Plaintiff here; namely, that the defendants had engaged in fraud by misrepresenting their standing and had submitted fraudulent documents in the underlying foreclosure action to concoct standing. *Id.* at 426. The plaintiff sought the return of his property, a declaration that the foreclosure judgment was void, and damages. *Id.* In affirming the dismissal of these claims, the Second Circuit emphasized how the plaintiff invited federal court review over "whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose." *Id.* As a result, the court held that the third requirement of the *Rooker-Feldman* doctrine was satisfied. *Id.* at 427. Moreover, because the plaintiff sought title to the property and a declaration that the foreclosure judgment was void, the court held that the second requirement of the *Rooker-Feldman* doctrine was also satisfied. *Id.*

Plaintiff's lack-of-standing claims here must suffer the same fate as *Vossbrinck's* claims. To resolve these claims, this Court would need to review whether Wells Fargo was the owner or holder of the Note and the Mortgage when it commenced the Second Foreclosure Action and whether the documents relied upon by Wells Fargo – *i.e.*, the Note, Mortgage, Loan Modification Agreement, and Assignment – were valid. But these determinations were necessarily made by the state court when it entered the Foreclosure Judgment. *See Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826 (KAM) (JRC), 2023 WL 8283148, at *4 (E.D.N.Y. Nov. 30, 2023) ("because the state court must necessarily have ruled on the validity of the underlying loan and mortgage in rendering its decision, Plaintiff's request for this Court to review the same loan and 'nullify' it meets the substantive requirements of *Rooker-Feldman*").

Consequently, for Plaintiff to be vindicated on these claims, this Court would need to review the state court's determinations and ultimately decide that they were wrong; something *Rooker-Feldman* explicitly prohibits. *See Vossbrinck*, 773 F.3d at 427; *In re Lunn*, No. 16-AP-

13

2014 (PRW), 2016 WL 5349726, at *7 (Bankr. W.D.N.Y. Sept. 23, 2016) (holding that *Rooker-Feldman* barred plaintiff's claims predicated on "irregularities in recording the various assignments of [her] mortgage" because such claims were caused by or arose out of a state court foreclosure judgment).

Moreover, the injuries Plaintiff complains of – wrongful foreclosure – were caused by the Foreclosure Judgment, and the remedies Plaintiff seeks – a declaration that the Foreclosure Judgment is void and an injunction against the sale of the Property – are something that this Court lacks the power to provide. *See Vossbrinck*, 773 F.3d at 427; *see also Murphy v. Riso*, No. 11-CV-0873 (JFB) (ARL), 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (noting that "numerous courts in this Circuit . . . have consistently held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine" and collecting cases).

Accordingly, this Court finds that all four requirements of *Rooker-Feldman* are met and respectfully recommends that Plaintiff's lack-of-standing claims be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## 2. *Res judicata* and collateral estoppel also bar Plaintiff's lack-of-standing claims

Defendants argue that even if *Rooker-Feldman* does not bar Plaintiff's lack-of-standing claims, they are still subject to dismissal on *res judicata* and collateral estoppel grounds. *See* Dkt. No. 11, at 14-16. This Court agrees.

It is well-established that a federal court must give a state court judgment the same preclusive effect that it would have in that state's courts. *See, e.g.*, *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000); *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146 (E.D.N.Y. 2016). Because the Second Foreclosure Action occurred in New York, this Court applies New York's *res judicata* and collateral estoppel doctrines. *See Council v. Better Homes*

*Depot, Inc.*, No. 04–CV–5620 (NGG) (KAM), 2006 WL 2376381, at *3 (E.D.N.Y. Aug. 16, 2006) ("A federal court must apply the rules of preclusion of the state in which the prior judgment was rendered.").

Under New York law, *res judicata* (or claim preclusion) provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Haziz-Ramadhan v. Specialized Loan Servicing, LLC*, No. 23-CV-02671 (OEM) (JMW), 2023 WL 8003339, at *3 (E.D.N.Y. Nov. 17, 2023) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002)). *Res judicata* applies where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Id.*; *see Mendez*, 2023 WL 8283148, at *5. "New York applies a transactional approach to *res judicata*, meaning that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Hourani*, 158 F. Supp. 3d at 147.

Relatedly, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *Ferris v. Cuevas*, 118 F.3d 122, 126 n.4 (2d Cir. 1997) (citations and quotation marks omitted). Collateral estoppel applies "when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Yeshiva Imrei Chaimhy Viznitz of Boro Park, Inc. v. City*

*of N.Y.*, 496 F. App'x 122, 123 (2d Cir. 2012) (quoting *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007)).

Here, all three elements of *res judicata* are met. First, the Second Foreclosure Action, which resulted in the Foreclosure Judgment, was a prior adjudication on the merits. *See Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397 (KMK), 2019 WL 1429982, at *11 (S.D.N.Y. Mar. 29, 2019) (holding that a foreclosure action resulting in a final judgment of foreclosure and sale was an adjudication on the merits); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (same). Second, the element requiring that the "the previous action involved [the party against whom *res judicata* is invoked] or its privy" is also met because Plaintiff was the defendant in the Second Foreclosure Action. *See* Dkt. No. 12-4. Third, Plaintiff raised his lack-of-standing claims as defenses in the Second Foreclosure Action. *See* Dkt. No. 12-5; *see also* Motion, at 5; September 19, 2018 Opposition to Motion in Second Foreclosure Action. Plaintiff is therefore precluded from relitigating these claims in this Court. *See Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 506 (S.D.N.Y. 2016) (holding that *res judicata* barred plaintiff's claims regarding the defendant's alleged lack of standing).

Plaintiff's lack-of-standing claims are likewise barred by the doctrine of collateral estoppel. At bottom, these claims are predicated on allegations that the documents relied upon by Wells Fargo – *i.e.*, the Note, Mortgage, Loan Modification Agreement, and Assignment – were invalid. *See, e.g.*, Dkt. No. 1, at 7-13. But the Supreme Court of New York State, Kings County determined that these documents were valid when it entered the Foreclosure Judgment, and Plaintiff has not shown that he did not have a full and fair opportunity to litigate these issues. Indeed, as noted above, Plaintiff was represented by counsel in the Second Foreclosure Action and filed various motions challenging the validity of these documents. *See* Dkt. No. 12-5; *see also* Motion, at 5;

September 19, 2018 Opposition to Motion in Second Foreclosure Action.  As such, the elements of collateral estoppel are met.  *See Mendez*, 2023 WL 8283148, at *6 (holding that collateral estoppel barred plaintiff's claims regarding the validity of the loan documents used by the mortgagee in the state court foreclosure action).

Accordingly, this Court respectfully recommends that Plaintiff's lack-of-standing claims be dismissed on *res judicata* and collateral estoppel grounds.

### B.    Plaintiff's fraud claims

Plaintiff also raises various allegations of fraud claims in the complaint.  *See* Dkt. No. 1, at 7-8, 11-12.  Construing the complaint to "raise the strongest claims that it suggests," *Hill*, 657 F.3d at 122, Plaintiff raises two theories of fraud.  First, he accuses Wells Fargo of engaging in a pattern of fraudulent conduct in the foreclosure actions by, *inter alia*, submitting allegedly fraudulent documents, knowingly misrepresenting its standing to foreclose, and engaging in "dual tracking" wherein Wells Fargo collected payments from Plaintiff while simultaneously seeking to foreclose on the Property.  *See* Dkt. No. 1, at 11-13.  Second, Plaintiff claims that he was fraudulently induced into signing the Loan Modification Agreement based on Wells Fargo's misrepresentations about its status as the lawful owner of the Note and Mortgage.  *Id.* at 7.

Defendants argue that Plaintiff's fraud claims are time barred and subject to dismissal on *res judicata* and collateral estoppel grounds.  Dkt. No. 11, at 13-15.  Defendants also argue that Plaintiff fails to state a claim for fraud and fails to plead fraud with specificity as required under Fed. R. Civ. P. 9(b).  *Id.* at 12-13.

1.    ***Rooker-Feldman* bars Plaintiff's fraudulent conduct claim but not Plaintiff's fraudulent inducement claim**

As an initial matter, this Court considers whether it has subject matter jurisdiction over Plaintiff's fraud claims or if they are subject to dismissal on *Rooker-Feldman* grounds.[8]

Insofar as Plaintiff accuses Wells Fargo of engaging in fraudulent conduct in the foreclosure actions, *Rooker-Feldman* bars these claims.  *See Worthy-Pugh*, 664 F. App'x at 21 ("[Plaintiff's] argument that the judgment was void because it was obtained through a fraudulent scheme to interfere with the judicial process does not defeat application of *Rooker-Feldman*"); *Gifford*, 2019 WL 3685225, at *8 ("Plaintiff's fraud on the court claim once again impermissibly asserts a lack of standing and asks this court to render the foreclosure judgment void").  Like Plaintiff's lack-of-standing claims, Plaintiff's fraudulent conduct claims invite federal court review over the Foreclosure Judgment and the propriety of the Second Foreclosure Action.  *See* Dkt. No. 1, at 11 ("I have been subjected to necessity  to having to defend against these entities   . . . simply because of the fraudulent misrepresentations that were made to me and the court.").  Here too, these claims allege injuries that stem from the Foreclosure Judgment.  *See id.* at 11 ("the defendants then attempted to deprive me of my property by initiating multiple lawsuits based on the unlawfully obtained refinance agreement.").  Accordingly, all four requirements of the *Rooker-Feldman* doctrine are satisfied, and consequently, this Court lacks subject matter jurisdiction over Plaintiff's fraudulent conduct claims.

---

[8] Because the *Rooker-Feldman* is jurisdictional, the Court can consider its impact on Plaintiff's fraud claims *sua sponte*.  *See Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-CV-6324 (PAE) (HBP), 2019 WL 3685225, at *8 n.4 (S.D.N.Y. July 8, 2019), *report and recommendation adopted*, 2019 WL 3564581 (S.D.N.Y. Aug. 6, 2019); *see also Koziel v. City Court of Yonkers*, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter based on the *Rooker-Feldman* doctrine).

Insofar as Plaintiff claims that he was fraudulently induced into signing the Loan Modification Agreement and seeks money damages from Defendants, *Rooker-Feldman* does not bar these claims.  *See Vossbrinck*, 773 F.3d at 427 (holding that Rooker-Feldman did not bar plaintiff's fraud claim for money damages); *Francis*, 2023 WL 2707098, at *7 (same).  A liberal reading of Plaintiff's complaint indicates that "it is this underlying alleged conduct—the alleged misrepresentations and failures to disclose [] for which Plaintiff seeks redress, rather than the state court judgment itself."  *Beasley v. Indy Mac Bank*, No. 16-CV-4629 (JS) (AKT), 2018 WL 1611667, at *7 (E.D.N.Y. Feb. 26, 2018) (holding that plaintiff's fraudulent inducement claim was not barred by *Rooker-Feldman*), *report and recommendation adopted*, 2018 WL 1611382 (E.D.N.Y. Mar. 31, 2018).  The Foreclosure Judgment "is therefore independent and separate from" the alleged conduct forming the basis for Plaintiff's fraudulent inducement claim, "precluding application of *Rooker-Feldman*."  *Id.*

## 2.   *Res judicata* **and collateral estoppel bar Plaintiff's fraud claims**

Notwithstanding the foregoing, Plaintiff's fraud claims are subject to dismissal on *res judicata* and collateral estoppel grounds.

First, Plaintiff raised both fraudulent inducement and fraudulent conduct claims in the Second Foreclosure Action.  *See, e.g.*, Dkt. No. 12-5; Motion, at 6.  As a result, these claims fall squarely within the *res judicata* doctrine, and Plaintiff is precluded from re-litigating these claims in this Court.  *See Swiatkowski*, 745 F. Supp. 2d at 169–73 (holding that *res judicata* barred plaintiff from re-litigating allegations of federal violations by defendant associated with alleged submission of fraudulent documents in related bankruptcy court proceedings); *Borrani,* 2019 WL 1429982, at *12 (holding that *res judicata* barred plaintiff's fraud claims).  In addition, for the same reasons identified in Section III(A)(2) *supra*, Plaintiff's fraud claims are also subject to

dismissal on collateral estoppel grounds. *See Hourani*, 158 F. Supp. 3d at 148 (holding that mortgagor's fraud claims were barred by collateral estoppel).

Accordingly, this Court respectfully recommends that Plaintiff's fraud claims be dismissed on *res judicata* and collateral estoppel grounds.

### 3.    Plaintiff's fraud claims are time barred

In addition to the foregoing jurisdictional and preclusion grounds for dismissal, Plaintiff's fraud claims should also be dismissed because they are barred by the applicable statute of limitations.

Under New York law, "the time within which [a fraud] action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  CPLR § 213(8).  "A cause of action based upon fraud accrues, for statute of limitations purposes, at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence."  *Monteleone v. Monteleone*, 162 A.D.3d 761, 762 (2d Dep't 2018) (citations and quotation marks omitted).  "The statute of limitations is an affirmative defense, and the defendant bears the burden of proving that the plaintiff's claim is untimely."  *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 156–57 (E.D.N.Y. 2010) (citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004)).

Here, insofar as Plaintiff alleges fraud based upon acts that occurred in connection with the Loan Modification Agreement, which was entered into on January 10, 2011, these claims are barred by the statute of limitations.  *See* Dkt. No. 1, at 30-36; Dkt. No. 12-4, at 44-50.  Even if Plaintiff was not aware of the fraud when he signed the Loan Modification Agreement, he was clearly aware of it by April 11, 2016, when his prior counsel filed a motion to dismiss in the Second

Foreclosure Action and raised these arguments.  *See* Motion, at 5-7.  Plaintiff also accused Wells

Fargo of various forms of fraudulent conduct in connection with the foreclosure actions.  *See id.*

Thus, regardless of whether this Court were to apply the two-year or six-year limitations period

set forth in CPLR § 213(8), Plaintiff's fraud claims are untimely as this action was not commenced

until August 1, 2023.  *See* Dkt. No. 1.

Accordingly, this Court respectfully recommends that Plaintiff's fraud claims be dismissed

as untimely.

### 4.    Plaintiff fails to plead fraud with sufficient plausibility or particularity

While the Court need not reach Defendants' alternative argument that the complaint fails

to state a claim for fraud and fails to plead fraud with specificity, this Court concludes that

Plaintiff's fraud claims are plainly insufficient even assuming they are not otherwise barred.

"Under New York law, the elements of common law fraud are a material, false

representation, an intent to defraud thereby, and reasonable reliance on the representation, causing

damage to the plaintiff."  *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (citation and

quotation marks omitted).  Further, allegations of fraud must be pled with particularity under Fed.

R. Civ. P. 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.").  Conclusory allegations of fraud

do not meet Rule 9(b)'s heightened pleading standard and are therefore subject to dismissal at the

motion to dismiss stage.  *See Nasso v. Bio Reference Labs.*, Inc., 892 F. Supp. 2d 439, 446

(E.D.N.Y. 2012) (citing *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971)).

To comply with Rule 9(b)'s specificity requirements, "the complaint must: (1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v.*

*Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  "If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them."  *Asdourian v. Konstantin*, 77 F. Supp. 2d 349, 354 (E.D.N.Y. 1999).

Here, Plaintiff fails to plead fraud with sufficient plausibility or particularity to survive a motion to dismiss.  First, the complaint fails to mention what involvement, if any, PHH had with the Note, Mortgage, Assignment, or Loan Modification Agreement, let alone the unlawful acts that Plaintiff claims stem from these documents.  In fact, Plaintiff does not mention PHH in the complaint at all besides listing them as a defendant.  Accordingly, Plaintiff cannot sustain a claim for fraud against PHH.  *See Sec. Pac. Equip. Leasing, Inc. v. Earthworm Tractor Co.*, No. 88-CV-8035 (JFK), 1990 WL 96757, at *2 (S.D.N.Y. July 3, 1990) (dismissing fraud claim against individual defendant because the complaint failed to refer specifically to any actions or conversations of that defendant).

Second, Plaintiff has not established that Wells Fargo has made a material misrepresentation of fact.  Significantly, the most basic element of a fraud cause of action is proof of a "representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury."  *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119 (1969).  While Plaintiff has identified apparent irregularities in the assignments submitted by Wells Fargo, he has not established that these irregularities rise to the level of fraud, nor has he identified any misstatements of fact made by Wells Fargo.  Instead, Plaintiff merely accuses Wells Fargo of misrepresenting its status as the holder of the Note and Mortgage but does not establish that Wells Fargo is not, in fact, the holder of the Note or the Mortgage.  Plaintiff's conclusory allegations to the contrary are insufficient to

22

state a claim for fraud. *See, e.g., Williams v. Ocwen Loan Servicing, LLC*, No. 19-CV-2187 (KAM) (LB), 2020 WL 5757640, at *6 (E.D.N.Y. Sept. 27, 2020) (dismissing fraud claim because "[p]laintiffs' complaint does nothing more than state bare legal conclusions in connection with the forgery claim"); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 119 (E.D.N.Y. 2015) ("Plaintiffs ... merely assert in a conclusory fashion that the copies of the documents sought to be recorded ... were forgeries. Thus . . . Plaintiffs fail to state a [claim] for forgery, and [the court] grants Defendant's motion to dismiss"). Moreover, Plaintiff is not a "part[y] or beneficiar[y] to the assignment. Thus, misrepresentations as to the manner of assignment would not make any difference because the same debt would have been owed regardless of which entity held the Note." *Levin v. Am. Document Servs., LLC*, No. 17-CV-1285 (JMA)(AYS), 2019 WL 3883640, at *8 (E.D.N.Y. June 25, 2019) (dismissing fraudulent inducement claim predicated on defendants' alleged use of a forged assignment).

Accordingly, this Court respectfully recommends that Plaintiff's fraud claims be dismissed for failure to state a claim and for failure to plead fraud with particularity.

### C.    **Plaintiff's Consumer Protection Claims**

As explained above, Plaintiff also raises several Consumer Protection Claims against Defendants based on alleged violations of GBL § 349, FDCPA, and TILA. *See* Dkt. No. 1, at 9, 11.

As an initial matter, the *Rooker-Feldman* doctrine does not bar Plaintiff's Consumer Protection Claims to the extent he seeks damages based on Wells Fargo's alleged misrepresentations related to the Note, Mortgage, Assignment, or Loan Modification Agreement. *See Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32, 34 (2d Cir. 2016) ("To the extent plaintiffs' complaint can be liberally construed to allege injury stemming from the same

transaction but not directly caused by the foreclosure judgment, their claims are not barred by *Rooker– Feldman*."); *see also Sykes*, 780 F.3d at 94–95 (holding that *Rooker-Feldman* did not bar FDCPA and GBL § 349 claims, which spoke "not to the propriety of the state court judgment[], but to the fraudulent course of conduct that defendants pursued in obtaining such judgment[]"); *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *7 (S.D.N.Y. Mar. 9, 2020) (holding that *Rooker-Feldman* did not bar TILA and GBL § 349 claims); *Borrani*, 2019 WL 1429982, at *9 (holding that Plaintiff's FDCPA and TILA claims were not barred by *Rooker-Feldman* because they were based on allegations of fraud in the securitization and transfer of the note); *Beasley*, 2018 WL 1611667, at *7 (holding that plaintiff's TILA claim was not barred by *Rooker-Feldman* because it was based on conduct that occurred prior to the state-court proceeding).

Even so, Plaintiff's Consumer Protection Claims are subject to dismissal on *res judicata,* collateral estoppel, and statute of limitations grounds. First, for the same reasons identified in Sections III(A)(2) and III(B)(2) *supra*, Plaintiff's Consumer Protection Claims are barred by the *judicata* and collateral estoppel doctrines. While Plaintiff did not specifically raise these claims in the Second Foreclosure Action, they are nonetheless barred because they "aris[e] out of the same transaction or series of transactions" at issue in the Second Foreclosure Action. *See Hourani*, 158 F. Supp. 3d at 147; *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-03783 (AMD) (SMG), 2020 WL 5658776, at *10 (E.D.N.Y. Sept. 23, 2020) (holding that plaintiff's claims for violations of GBL § 349 and RICO were based on the same facts as the defenses in the underlying foreclosure action and were therefore barred by *res judicata*."); *Fequiere v. Tribeca Lending*, No. 14-CV-812 (RRM) (LB), 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (*res judicata* barred claims

alleging violations of RICO, FDCPA, CFPA, and RESPA because the claims were or could have been raised in the state court foreclosure action).

Plaintiff's Consumer Protection Claims are also time barred.  The statute of limitations for FDCPA and TILA claims is one year from the date of the occurrence of the violation.  *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by [FDCPA] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs."); 15 U.S.C. § 1640(e) ("An action to enforce any liability created by [TILA] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs.").  The statute of limitations for a GBL § 349 claim is three years.  *See Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) (GBL § 349 claims "must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001)).

Applying the above statutes of limitations, Plaintiff's FDCPA, TILA, and GBL § 349 claims are all time-barred.  To the extent these claims are based on actions taken by Wells Fargo in connection with the Loan Modification Agreement, they would have accrued, at the latest, on January 10, 2011 when the parties entered into the agreement.  *See* Dkt. No. 1, at 30-36; Dkt. No. 12-4, at 44-50.  Moreover, to the extent these claims are based on actions taken by Defendants with respect to the First Foreclosure Action, which ended in 2011, or the Second Foreclosure Action, where judgment was entered on January 14, 2019, they too are time barred.

Accordingly, this Court respectfully recommends that Plaintiff's FDCPA, TILA, and GBL § 349 claims be dismissed on *res judicata*, collateral estoppel, and statute of limitations grounds.

### D.    Plaintiff's conspiracy claim under 18 U.S.C. § 241

Plaintiff also alleges that Defendants have engaged in a conspiracy in violation of 18 U.S.C. § 241. *See* Dkt. No. 1, at 4. This claim should be dismissed because 18 U.S.C. § 241 is a criminal conspiracy statute that does not provide a basis for a civil cause of action. *See, e.g.*, *Delarosa v. Serita*, No. 14-CV-737 (MKB), 2014 WL 1672557, at *2 (E.D.N.Y. Apr. 28, 2014) (dismissing conspiracy claim brought under 18 U.S.C. § 241 because "there exists no private right of action to enforce th[is] criminal statute[], which, as a general matter, [is] prosecuted by the government and not by private individuals."); *see also Hill*, 191 F. App'x at 14 (no private right of action under 18 U.S.C. § 241).

Accordingly, this Court respectfully recommends dismissal of Plaintiff's 18 U.S.C. § 241 claim.

### E.    Plaintiff's deprivation of rights claim

Plaintiff also raises a deprivation of rights claim against Defendants. *See* Dkt. No. 1, at 11-13. Notwithstanding whether this claim is well pled, it is subject to dismissal on *Rooker-Feldman* grounds for the same reasons identified above. *See Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 247 (D. Conn. 2016) (holding that deprivation of rights claim was barred by *Rooker-Feldman* because plaintiff's alleged injury was "a product of the judgment in the foreclosure action and vindication of this claim would require this court to review the state court judgment").

Accordingly, this Court respectfully recommends that Plaintiff's deprivation of rights claim be dismissed for lack of subject matter jurisdiction.

### F.    Plaintiff's constitutional claims

Lastly, Plaintiff alleges that Defendants violated his constitutional rights. *See* Dkt. No. 1, at 4. These claims should be dismissed because Defendants are private entities, not state actors.

*See Azkour v. Bowery Residents' Comm., Inc.*, 646 F. App'x 40, 41 (2d Cir. 2016) (affirming dismissal of plaintiff's claims alleging constitutional violations because the defendant was a private entity, not a state actor); *Pierre v. Ingber L. Firm, PLLC*, No. 16-CV-5974 (MKB), 2017 WL 384322, at *2 (E.D.N.Y. Jan. 25, 2017) (dismissing constitutional claims because defendant was a private entity).

Accordingly, this Court respectfully recommends dismissal of Plaintiff's constitutional claims.

## IV.    **Dismissal Under Fed. R. Civ. P. 12(b)(5)**

Even if Plaintiff's claims were not subject to dismissal for the reasons identified above, the complaint would still be subject to dismissal for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).

Fed. R. Civ. P. 4(h) governs service of process on a corporate entity.  Under Rule 4(h)(1)(A), a corporation can be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."  Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a corporation can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual," which allows service in accordance with the law of the state where the district court is located—here, New York law.  Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1).

Under New York law, personal service on a corporation can be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." CPLR § 311(a)(1).  A plaintiff may also serve a corporation by "[p]ersonally delivering to and leaving with the secretary

27

of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee," or by "[e]lectronically submitting a copy of the process to the department of state together with the statutory fee." N.Y. Bus. Corp. Law § 306(b)(1).

Here, Defendants contend that Plaintiff did not effectuate proper service on them pursuant to Fed. R. Civ. P. 4(h) because the summons and complaint were not personally delivered to Defendants, nor to Defendants' registered agents. *See* Dkt. No. 11, at 9-12.

### A.    Service on Wells Fargo

Plaintiff purports to have effected service on Wells Fargo by delivering a copy of the summons and complaint to a bank teller at a local Wells Fargo branch. *See* Dkt. No. 6, at 6. The affidavit of service filed by the Plaintiff states: "[Teller] is authorized to accept service." Defendants claim that service was improper because the teller was not authorized to accept service, and the affidavit of service does not explain how the process server arrived at this determination. *Id.*

As explained above, "[u]nder New York law, a corporation can be served through 'an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.'" *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043-DLI-SJB, 2019 WL 1450746, at *4 (E.D.N.Y. Jan. 28, 2019) (citing CPLR § 311(a)(1)). "In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service. As long as the process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept

service." *Id.* at *5 (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)).

Here, the Court cannot discern what steps, if any, the process server took to conclude that the teller was authorized to accept service of process. The affidavit of service merely states, "[Teller] is authorized to accept service," but does not explain how the process server arrived at this conclusion. *See* Dkt. No. 6, at 6. "This facial infirmity suggests service was not made to a person authorized to accept service," nor demonstrates Plaintiff's reasonable reliance on Wells Fargo's employees to determine who could accept service. *See Feng Lin*, 2019 WL 1450746, at *5 (granting motion to dismiss because the affidavit of service did not explain how person was authorized) (citation omitted); *see also Tung v. Hemmings*, No. 19-CV-5502 (RPK) (SJB), 2021 WL 4147419, at *3 (E.D.N.Y. Sept. 13, 2021) ("Courts in this circuit consistently decline to find affidavits adequate to establish service on a corporate defendant when the individual served is not identified and the affidavit fails to explain the basis for the affiant's conclusion that the individual served was authorized to accept service for the corporation.").

As it is Plaintiff's burden to prove that he properly served Wells Fargo, *see C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005), and as Plaintiff has not submitted any information or documentation to establish that he served Wells Fargo properly, this Court holds that Plaintiff did not properly effect service on Wells Fargo. Accordingly, in addition to the reasons set forth above, this Court respectfully recommends that Plaintiff's claims against Wells Fargo be dismissed for insufficient service of process.

**B.    Service on PHH**

Plaintiff served PHH with the summons and complaint by delivering copies to Houser LLP and McCabe, Weisberg & Conway, LLC. *See* Dkt. No. 6, at 2-3, 5. Defendants argue that this

service was improper because neither Houser LLP nor McCabe, Weisberg & Conway, LLC are PHH's registered agent and because PHH's actual registered agent—"Corporation Service Company"—is clearly listed on the New York Department of State website. *See* Dkt. No. 11, at 9.

"Generally, service upon an individual's attorney is not sufficient to confer personal jurisdiction." *Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) ("service of process on an attorney not authorized to accept service for his client is ineffective"). "Moreover, simply serving in the capacity of attorney, or representing the client previously, does not render the attorney an agent for service of process." *Yaxin Jing v. Angel Tips, Inc.*, No. 11-CV-05073 (RRM) (JMA), 2013 WL 950585, at *3 n.1 (E.D.N.Y. Mar. 11, 2013). "However, where the circumstances indicate that an individual performs tasks for the client beyond the typical attorney-client relationship, there may be implied authorization for service upon the individual's attorney." *Fed. Home Loan Mortg. Corp. v. Mirchandani*, No. 94-CV-1201 (FB), 1996 WL 534821, at *4 (E.D.N.Y. Sept. 18, 1996). "The critical distinction is whether the attorney's activities on behalf of the client are purely primary professional functions insufficient to warrant a finding of implied authority to receive services of process, or whether the attorney performs services beyond the scope of the typical attorney-client relationship." *Id.* at *5 (citations and quotation marks omitted).

By way of example, in *Fed. Home Loan Mortg. Corp.*, the Court held that service of process on the defendant's attorney was proper based on evidence that the attorney "clearly perform[ed] more than the mere professional functions of an attorney by managing all of [Defendant's] property." *Id*. Here, by contrast, there is no indication that PHH's attorneys are performing tasks beyond their existing capacity as counsel for PHH, nor does Plaintiff allege

anything to this effect.  Absent any evidence to support a finding of implied authorization, this Court finds that Plaintiff did not properly effect service on PHH.  Accordingly, in addition to the reasons set forth above, this Court respectfully recommends that the claims against PHH be dismissed for insufficient service of process.

## V.   <u>Leave to Amend</u>

"With respect to leave to amend, the Second Circuit has cautioned that district courts should not dismiss a *pro se* complaint without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Hylton*, 338 F. Supp. 3d at (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'" *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).  "One appropriate basis for denying leave to amend is that the proposed amendment is futile . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted).

Here, any amendment to Plaintiff's claims would be futile because Plaintiff's claims are barred by either the *Rooker-Feldman* doctrine, *res judicata* or collateral estoppel, or the applicable statutes of limitation.  *See Hylton*, 38 F. Supp. 3d at 284.  Accordingly, this Court respectfully recommends that the District Court deny Plaintiff leave to file an amended complaint.

## VI.   <u>Conclusion</u>

Accordingly, for the reasons set forth above, this Court respectfully recommends that Defendants' motion to dismiss be granted and that Plaintiff be denied leave to file an amended complaint.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Defendants' counsel to serve a copy of this Report and Recommendation by overnight mail, first-class mail, and email on Plaintiff and to file proof of service on ECF by May 7, 2024. Copies shall be served at the following addresses:

Ewart Burton
751 East 56th Street
Brooklyn, New York 11234
TEMPTATIONSPROd@aol.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              May 4, 2024

SO ORDERED:

 */s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge